## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ROBERT W. EMERY III, D.D.S.**
750 Potomac River Rd.
McLean, VA 22102

    **Plaintiff,**

    **v.**

**DOCTORS GUTTENBERG AND
EMERY, P.C.,**
2021 K Street, N.W., Suite 200
Washington, DC 20006-1003

    **Defendant.**

)
)
)
)
)
)
)
)
)
)
)
)
)

Case: 1:08-cv-00537
Assigned To : Lamberth, Royce C.
Assign. Date : 3/28/2008
Description: Contract

## COMPLAINT

Plaintiff Robert W. Emery, III, D.D.S., through his undersigned counsel, brings this Complaint against Defendant Doctors Guttenberg and Emery, P.C., and states, claims and alleges as follows:

## INTRODUCTION

1.     Plaintiff Emery and Dr. Steven A. Guttenberg were formerly 50% co-owners of a professional corporation called "Doctors Guttenberg and Emery, P.C." (hereinafter "the Corporation"). The Corporation was engaged in the practice of oral surgery. Following a dispute precipitated by substantial evidence that Dr. Guttenberg had engaged in a long pattern of inappropriate conduct toward employees and patients, Dr. Emery and Dr. Guttenberg separated their practices and terminated their business relationship through a Settlement Agreement dated February 11, 2008 (hereinafter, "the Settlement Agreement"). The Settlement Agreement, *inter alia*, required the Corporation

1

(now wholly owned by Dr. Guttenberg) to: (i) pay over to Dr. Emery forty percent (40%) of all collections received by the Corporation after January 1, 2008, from any and all patients that Dr. Emery treated through February 29, 2008; and (ii) remove Dr. Emery's name from the name of the Corporation. Because the Corporation has not complied with these terms – indeed, it has not paid Dr. Emery *any* of the money it has collected from Dr. Emery's patients in calendar year 2008 – Dr. Emery is entitled to the relief he seeks herein.

## PARTIES

2.      Plaintiff Robert W. Emery, III is an oral surgeon and a resident of the Commonwealth of Virginia.

3.      The Corporation is a professional corporation whose business is the practice of oral surgery in the District of Columbia. The Corporation, formerly owned equally by Dr. Emery and Dr. Steven A. Guttenberg, is now wholly-owed by Dr. Guttenberg as a result of the Settlement Agreement.

## JURISDICTION

4.      This Court has jurisdiction over this matter under 28 U.S.C. § 1332.

5.      The amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

6.      Venue in this District is proper under 28 U.S.C. § 1291 because, *inter alia*, the Corporation is a District of Columbia corporation, the Corporation transacts its business in the District of Columbia, the medical services for which Dr. Emery was and is to be compensated by the Corporation under the contract at issue (*i.e.*, the Settlement

Agreement) were rendered in the District of Columbia, and Dr. Emery has suffered injury in the District of Columbia.

## FACTUAL BACKGROUND

7.      In 1978, after practicing oral surgery in Maryland for some period of time, Dr. Guttenberg moved his practice to the District of Columbia, where he incorporated and registered a professional corporation, "Steven A. Guttenberg, D.D.S., P.C." Steven A. Guttenberg, D.D.S., P.C. was engaged in the practice of oral surgery.

8.      In the summer of 1990, Dr. Emery became a 50% co-owner of the practice. At that time, the name of the business was changed to "Doctors Guttenberg and Emery, P.C."

9.      Dr. Guttenberg and Dr. Emery practiced together as the 50% co-owners and sole directors and officers of the Corporation for many years. In 2007, however, mounting evidence that Dr. Guttenberg had repeatedly engaged in inappropriate behavior toward employees and patients, coupled with Dr. Guttenberg's steadfast unwillingness to address the serious business risks such misbehavior posed, forced Dr. Emery to come to the realization that, professionally and ethically, he could no longer continue to work with Dr. Guttenberg. As a result, Dr. Emery sought over the course of several months to devise an amicable separation of the practice. Yet, at every turn, Dr. Guttenberg responded to Dr. Emery's overtures with harassing, retaliatory measures. Among other things, he purported unilaterally to terminate Dr. Emery's employment and threatened to restrict Dr. Emery's ability to continue practicing oral surgery in the District of Columbia.

10.    Beginning in the late Fall of 2007, Dr. Emery and Dr. Guttenberg engaged in mediation to try to resolve their differences. In the midst of the mediation, however, Dr. Guttenberg, without warning, filed a transparently pre-emptive, meritless lawsuit designed to create a false first impression that it was Dr. Emery, rather than Dr. Guttenberg, who had engaged in wrongdoing.

11.    Together with the lawsuit, Dr. Guttenberg filed a motion for a temporary restraining order to try to preclude Dr. Emery from setting up a new, separate practice in the District of Columbia.

12.    Dr. Guttenberg agreed to dismiss his complaint, and to settle the matter, the day before Dr. Emery's response to the motion for temporary restraining order was due – *i.e.*, right before Dr. Emery's response (complete with sworn declarations from numerous witnesses) would have exposed the misconduct that Dr. Guttenberg had engaged in.

13.    The settlement is embodied in a Settlement Agreement executed by Dr. Emery, Dr. Guttenberg and the Corporation dated February 11, 2008. A true and accurate copy of the Settlement Agreement is annexed hereto as Exhibit A.

14.    Among other things, through the Settlement Agreement, Dr. Guttenberg and Dr. Emery separated their practices, Dr. Emery sold all of his interests in the Corporation to Dr. Guttenberg, and Dr. Emery was permitted to establish his own practice in the District of Columbia.

15.    Paragraph 3 of the Settlement Agreement provides in pertinent part:

> On the Effective Date [February 11, 2008] … the Corporation will amend the Corporation's Articles of Incorporation to remove Emery's name therefrom.

4

16.    Upon information and belief, the Corporation has not amended its Articles of Incorporation to remove Dr. Emery's name therefrom.

17.    Paragraph 5b of the Settlement Agreement provides in pertinent part:

> For the period commencing January 1, 2008 and continuing thereafter through and following the date that Emery vacates the premises, Emery agrees that the Corporation, and not Emery, shall bill and collect fees for his services performed while on the Premises as was customary prior to the Effective Date [February 11, 2008]. *Emery shall be entitled to receive forty (40%) percent of all collections received from and after January 1, 2008 (including receivables that were on the books and records of the Corporation as of December 31, 2007) by the Corporation from patients he treated whether the treatment occurred before or during the Transition Period [which ended February 29, 2008], such payment to be made to Emery at the time of collection but in no event less often than bi-weekly, and shall continue to be paid to Emery after the conclusion of the Transition Period until all such receivables have been collected by the Corporation*, with the remaining sixty (60%) per cent being paid to the Corporation for rent and overhead. … Any salary received by Emery subsequent to January 1, 2008, for services rendered subsequent to January 1, 2008 (presently, approximately $42,000) shall be deemed a credit to the Corporation against Emery's collections. *The parties understand that the approximate amount, as of the date of execution of this Agreement [February 11, 2008], of the accounts receivable are $57,611.74 and collections are $277,978.35, for a total of $335,590.90, of which Emery is entitled to 40% (less the salary paid as referenced hereinbefore).*

18.    Dr. Emery vacated the Corporation's premises on or about February 27, 2008.

19.    Upon information and belief, between January 1, 2008 and February 26, 2008, the Corporation had been paid approximately $423,751.75 by or on behalf of patients Dr. Emery had treated.  Under paragraph 5b of the Settlement Agreement, Dr. Emery was and remains entitled to receive 40% of that sum, less the $42,000 in salary he received after January 1, 2008, for a total of approximately $127,500.

20.    Upon information and belief, the Corporation has collected money after February 26, 2008, and continues to collect money, from or on behalf of patients Dr. Emery treated before February 29, 2008.  Dr. Emery is also entitled to receive 40% of those payments.

21.    Since the date the Settlement Agreement was executed, Dr. Emery has received no money from the Corporation.  As a result, he has not received any of the money the Corporation has collected since January 1, 2008, from patients he treated prior to February 29, 2008, even though the Settlement Agreement expressly calls for the Corporation to pay over such monies to Dr. Emery no less than bi-weekly.

22.    The Corporation and Dr. Guttenberg (now the Corporation's sole owner, director and officer) have access to the books and records of the Corporation.  No longer an owner, director or officer of the Corporation, Dr. Emery does not.  As a result, Dr. Guttenberg, unlike Dr. Emery, has access to the information needed in order to determine precisely how much the Corporation owes Dr. Emery under paragraph 5b of the Settlement Agreement.

23.    The Corporation has not provided such information to Dr. Emery, despite Dr. Emery's requests for such information.

24.    On Monday, March 10, 2008, Dr. Emery, through counsel, notified Dr. Guttenberg and the Corporation that he (Dr. Emery) had not been paid any of the monies due to him under the Settlement Agreement, and he sought an explanation as to why no such payments had been made.

25.    On March 13, 2008, having received no response to his March 10 inquiry, Dr. Emery, again through counsel, reiterated his request for an explanation as to why he

had not yet been compensated, as required by the Settlement Agreement. Dr. Emery further requested "an accounting of all receivables and collections received from and after January 1, 2008 through February 29, 2008 based on patients that Dr. Emery treated [up through February 29, 2008] so that the total amount due and owing to Dr. Emery can be calculated and paid."

26.    On March 13, 2008, counsel for the Corporation and Dr. Guttenberg (Geoffrey P. Gitner, Esq.) responded to Dr. Emery, indicating that he would check with his client.

27.    On March 20, 2008, still having received no information from Dr. Guttenberg or the Corporation, Dr. Emery again sent a written demand for payment of the monies owed to him under the Settlement Agreement. The letter provided notice that if, by close of business on March 25, 2008, Dr. Emery did not receive either the required payment or an indication that such payment would be forthcoming, Dr. Emery would be forced to seek judicial resolution of the matter.

28.    To date, neither Dr. Guttenberg nor the Corporation has responded to Dr. Emery's requests, and the payments due to Dr. Emery under the Settlement Agreement have not been made.

## COUNT I
## (BREACH OF CONTRACT)

29.    Paragraphs 1 – 28 above are incorporated by reference as if they were restated here in their entirety.

30.    The Corporation has breached paragraph 5b of the Settlement Agreement because it has not paid Dr. Emery, as required, 40% of its collections from and after January 1, 2008, from patients treated by Dr. Emery up through February 29, 2008.

31.     The Corporation has breached the Settlement Agreement because it has not provided Dr. Emery the information needed to determine and confirm how much it owes him under paragraph 5b of the Settlement Agreement.

32.     Dr. Emery is entitled to recover the monies owed to him under the terms of paragraph 5b of the Settlement Agreement, plus interest.

33.     The Corporation has breached paragraph 3 of the Settlement Agreement because it has not, as required, changed its name to remove Dr. Emery's name therefrom.

34.     Dr. Emery is entitled to have the Corporation remove his name from its Articles of Incorporation under the terms of paragraph 3 of the Settlement Agreement.

35.     Under paragraph 5f of the Settlement Agreement, Dr. Emery is entitled to recover from the Corporation the fees and costs he has incurred, and will incur, in bringing and maintaining this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Robert W. Emery, III respectfully requests that this Court enter judgment in his favor and against the Corporation:

1.     Declaring that the Corporation violated paragraphs 3 and 5b of the Settlement Agreement;

2.     Requiring the Corporation to change its Articles of Incorporation to remove Dr. Emery's name therefrom, pursuant to paragraph 3 of the Settlement Agreement;

3.     Awarding Dr. Emery damages, the exact amount to be proven at trial, under paragraph 5b of the Settlement Agreement, plus interest thereon;

4.     Awarding Dr. Emery the fees and costs, including attorneys' fees, the exact amount to be proven at trial, that he has incurred and continues to incur in maintaining this action, as provided for in paragraph 5f of the Settlement Agreement; and

5.     Granting Dr. Emery such other relief as the Court deems just and proper.

Respectfully submitted,

_____
Brian L. Schwalb (D.C. Bar No. 428551)
Seth A. Rosenthal (D.C. Bar No. 482586)
Venable LLP
575 7th Street, N.W.
Washington, DC  20004
Telephone:  (202) 344-4000
Facsimile:  (202) 344-8300

**_Counsel for Plaintiff Robert W. Emery, III_**

Dated:  March 28, 2008

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASES

This Settlement Agreement and Mutual Releases (the "Agreement") is entered into this 11th day of February, 2008 by and among Drs. Guttenberg and Emery P.C., ("Corporation"), Dr. Steven Guttenberg ("Guttenberg") and Dr. Robert Emery ("Emery") (hereafter collectively referred to as the "Parties").

WHEREAS, Guttenberg and Emery seek to separate their practices, and Emery seeks to terminate his interests in the Corporation; and

WHEREAS, Guttenberg and Emery desire to establish separate practices; and

WHEREAS, Emery desires to resolve the obligations he owes to the Corporation and to Guttenberg under the Guttenberg and Emery, P.C. Shareholder Agreement, dated July 30, 1990 (the "Shareholder Agreement") and Employment Agreement between Emery and the Corporation dated July 30, 1990 ("Emery's Employment Agreement"); and

WHEREAS, the parties desire to avoid the expense and annoyance of litigation, and seek to resolve their differences without resort to litigation;

NOW THEREFORE, in consideration of the mutual covenants and releases contained herein and for other good and valuable consideration, it is agreed as follows:

1.    <u>Sale of Stock</u>.

On February 11th, 2008 (the "Effective Date") Emery will convey to Guttenberg all of his interest, including his stock in the Corporation, any claim he may have in the Corporation and any interest and/or claim he may have in the assets or good will of the Corporation, including without limitation all of Emery's interest in or claims to interest in the Washington Institute of Mouth, Face and Jaw Surgery (hereafter collectively referred to as "Emery's Interest").

2.    <u>Purchase Price</u>.

The total price for Emery's Interest shall be $(zero) ("Sales Price").

3.    <u>Resignation as a Director, Officer, and Employee; Change of Name of Corporation</u>.

On the Effective Date Emery will resign as a director, officer and employee of the Corporation and the Corporation will amend the Corporation's Articles of Incorporation to remove Emery's name therefrom.

4.    <u>Split of 2007 Year End Profits</u>.

Subject to the terms in this Agreement, the parties have divided the Corporation's 2007 profits equally, with the customary adjustments for benefits and entitlements that either may have taken during the course of the year. Guttenberg and Emery agree they have reviewed the financial records of the Corporation and agree that the Corporation's 2007 profits are those calculated by the Corporation's accountant, William Beale and set forth in the profit and loss statement prepared by Beale for the 2007 year end.

5.     **Emery's Use of Premises after Effective Date.**

a.     Emery shall be permitted to continue to use the Corporation's offices (the "Premises") until February 29, 2008 (the "Transition Period") in order to treat patients seen by him while an Employee of the Corporation as well as new patients who are referred to him or who otherwise seek treatment from him. Emery shall be deemed a tenant during the Transition Period, and agrees that he will vacate the Premises on before February 29, 2008. Emery further agrees that should he fail to vacate the Premises by February 29, 2008, he agrees that he may be barred as of March 3, 2008 from the premises and agrees that an Order by the District of Columbia Superior Court shall be entered against him for injunctive relief barring him from the Premises.

The Corporation and Guttenberg agree to not interfere with Emery's use and possession of the Premises during the Transition Period and to provide to Emery all of the same facilities, equipment, supplies, staffing, computers, communication devices, and other office needs the same as Emery received prior to the commencement of the Transition Period. During the Transition Period, the phone will be answered in the same manner as previously reflecting the names of both Dr. Guttenberg and Dr. Emery, and the signage and office stationary will also continue to reflect the names of both doctors, the same as prior to the Effective Date.

b.     For the period commencing January 1, 2008 and continuing thereafter through and following the date that Emery vacates the Premises, Emery agrees that the Corporation, and not Emery, shall bill and collect fees for his services performed while on the Premises as was customary prior to the Effective Date. Emery shall be entitled to receive forty (40%) per cent of all collections received from and after January 1, 2008 (including receivables that were on the books and records of the Corporation as of December 31, 2007) by the Corporation from patients he treated whether the treatment occurred before or during the Transition Period, such payments to be made to Emery at the time of collection but in no event less often than bi-weekly, and shall continue to be paid to Emery after the conclusion of the Transition Period until all such receivables have been collected by the Corporation, with the remaining sixty (60%) per cent being paid to the Corporation for rent and overhead. Professional dues, licenses and other customary annual expenses shall be appropriately paid pro rata, including Emery's license for the District of Columbia, but the Corporation will not pay for Emery's licenses for any jurisdictions other that the District of Columbia. Any salary received by Emery subsequent to January 1, 2008, for services rendered subsequent to January 1, 2008 (presently, approximately $42,000) shall be deemed a credit to the Corporation against Emery's collections. The Parties understand

- 2 -

that the approximate amount, as of the date of execution of this Agreement, of the accounts receivable are $57,611.74 and collections are $277,978.35, for a total of $335,590.90, of which Emery is entitled to 40% (less the salary paid as referenced hereinbefore). The Corporation shall not be responsible for Emery's dues to non-professional organizations. From January 1, 2008 through the Transition Period the Corporation shall continue to pay for the overhead that was customary to the Corporation prior to the Effective Date, which shall include without limitation, lease, payroll and medical supplies. However, Emery shall not be reimbursed by the Corporation for any of his personal credit card charges.

c.    Emery shall conduct himself in the same professional manner as was customary prior to December 31, 2007. Guttenberg shall also conduct himself in a professional manner towards Emery and those employees who provide services to Emery during the Transition Period. Emery shall be responsible for the care and treatment of his patients, and shall indemnify the Corporation and Guttenberg against any claims or attorneys fees and costs to defend any action regarding or deriving from any claim for professional malpractice, neglect or other liability related to Emery during the Transition Period. During the Transition Period, Emery shall maintain or obtain dental malpractice insurance that provides coverage of $1 million per patient and $3 million total.

d.    During the Transition Period the administration of the Corporation, including the Premises, will continue to be managed by Guttenberg as was customary prior to December 31, 2007. Emery agrees that during the Transition Period he shall not incur any Corporation expense, liability or obligation without Guttenberg's prior written consent.

e.    The Parties agree that this Agreement is confidential, and that confidentiality is a material term of the Agreement, although the terms and provisions of this Agreement may be shared by Guttenberg and Emery with their professional advisors and their spouses. The parties further agree that a violation of the terms of this Agreement shall subject the breaching party to injunctive relief to enjoin a breach of confidentiality and that the non-prevailing party shall be liable to the prevailing party for any attorneys' fee and costs in either pursuing injunctive or compensatory damage relief or enforcing this provision.

Notwithstanding the foregoing, the parties are free to reveal to others that they have decided to separate their practices, and have entered into an agreement pursuant to which Emery has sold his interest in the Corporation to Guttenberg and will continue to practice dentistry with the Corporation until on or before February 29, 2008 at which time his current patients will be invited to continue to be treated by him at his new office. In addition, the parties are free to reveal the existence and contents of this Agreement in the context of resolving any dispute that might arise among them concerning this Agreement.

f.    In the event of any litigation among any of the parties arising out of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party his attorneys' fees and costs related to such litigation.

g.      The parties have agreed that the statement attached hereto as Exhibit A (the "Statement") shall be used by all parties (and upon instruction from them by their employees) as to the reason that Emery has withdrawn from the Corporation. Any material deviation from the Statement shall constitute a material breach and the breaching party shall be subject to injunctive relief to enjoin the breach and the non-prevailing party shall be liable to the prevailing party for any attorneys' fee and costs in either pursuing injunctive or compensatory damage relief or enforcing this provision.

h.      During the Transition Period no employee of the Corporation shall be terminated except for extreme cause and only if both Guttenberg and Emery, in the exercise of their good faith judgment, agree to the termination. Employees shall be given as a reason for Emery's withdrawal the Statement, and both Guttenberg and Emery shall be free to invite the employees to join or stay with their respective practices. On or before February 19, 2008 Emery shall provide notice to the Corporation of the identity of any employees who have decided to join Emery in his new practice. Corporate employees can decide on their own with whom they will choose to associate in the future and all employees shall receive all benefits customarily due them whether they remain with the Corporation or leave the Corporation.

i.      No new dentists will be employed by the Corporation or Emery during the Transition Period; provided, however, that as of the Effective Date, Guttenberg and Emery are each free to arrange to associate or hire new dentists for their respective practices.

j.      Patients will be seen on the same basis as was customary prior to December 31, 2007.

k.      During and following the Transition Period, both doctors are free to seek present and future business from referring doctors and Emery shall have no duty to the Corporation in that regard, and Emery shall be entitled to tell the referring doctors and his past, present, and future prospective patients that he will be separating his practice and that they are invited to obtain treatment from him at his new location when it has been set up.

l.      The Parties agree that they shall execute all papers that may be necessary or convenient to effectuate this Agreement.

m.      During the Transition Period, Emery shall be entitled to arrange for the transfer of electronic data from the Corporation's files into a medium that will facilitate transfer of the patient and accounts receivable records to Emery's new practice provided that such patient and accounts receivable records pertain to patients Emery treated during the Transition Period and patients that Dr. Emery treated within two years prior to the Effective Date.

n.      Emery may conduct his practice during the Transition Period in the form of a newly established professional corporation of which, during the Transition Period, he shall be the sole dentist, unless this would negate the Corporation's present malpractice insurance coverage, in which event, Emery shall not establish his own professional corporation.

- 4 -

o.    If he has a valid business purpose, Emery may request that the Corporation make, or have made, at Emery's expense , copies of the records of the Corporation necessary for said valid business purpose, and the Corporation shall provide such requested records to Emery within five (5) business days.

p.    The Corporation shall on the Effective Date pay, and shall remain responsible for paying, any outstanding or unbilled amounts due to JAMS in connection with the parties' mediation with Judge Richard A. Levie.

q.    Emery shall return to the Corporation's office all corporate equipment in his possession (along with any passwords for password protected items), and any corporate records in his possession or in the possession of others acting on his behalf that contain patient and client lists, provided such equipment and/or records are not otherwise addressed in this Agreement. The only property Dr. Emery (and any one acting on his behalf) may remove from the office shall be his personal property.

r.    Any Declarations that current or former employees (excluding that of Dr. Emery) of the Corporation have provided to Dr. Emery or his counsel prior to the Effective Date of this Agreement, intended to be used by counsel for Emery as attachments to the opposition to the Corporation's and Guttenberg's motion for injunctive relief in the pending lawsuit (which opposition will not be filed as a consequence of the parties' entry into this Settlement Agreement and Mutual Releases) shall be provided to Guttenberg's counsel upon the last of the following to occur:

1)    Emery's departure from the Premises;

2)    March 3, 2008;

3)    upon payment to Emery of his 40% share of all collections and accounts receivable received and paid to the Corporation as of February 29, 2008; and

4)    dismissal of the lawsuit as provided in paragraph 21 with prejudice.

Guttenberg and the Corporation agree that (i) they shall not publish or disclose such Declarations, including the contents thereof, to any person or entity not a party to this Settlement Agreement and Mutual Releases except to their legal counsel and professional advisers (and only in that case if such counsel and professional advisors agree in writing to themselves maintain the confidentiality of the information) or in the context of defense by them of a lawsuit, and (ii) that they will not assert any claim or contention that the statements made by the Declarants that are contained within the Declarations constitute a violation of any of their (the Corporation's or Guttenberg's) rights, including, but not limited to, any claims of slander, libel, or tortious interference with contractual relations. Further, the Corporation and Guttenberg agree that they shall not confront the Declarants about providing the Declarations.

- 5 -

Nothing contained in this provision, however, shall prevent the Corporation or Guttenberg from seeking to refute the statements made in any of the Declarations should any of the Declarants bring a claim or lawsuit against the Corporation or Guttenberg. Further, the Corporation and Guttenberg reserve the right to bring any counterclaims against any of the Declarants that initiate a suit or claims against the Corporation or Guttenberg, but no such counterclaim shall assert that the statements made by the Declarants that are contained within the Declarations constitute a violation of any of their (the Corporation's or Guttenberg's) rights, including, but not limited to, any claims of slander, libel, or tortious interference with contractual relations.

The Declarants shall be third party beneficiaries of this paragraph 5r of the Settlement Agreement and Mutual Release.

6. **Termination of Shareholders' Agreement**.

As of the Effective Date the Shareholders' Agreement will be deemed terminated and of no further force or effect, and the parties thereto shall have no further obligations to each other under said agreement, and no provisions thereof shall survive said termination.

7. **Termination of Employment Agreement**

As of the Effective Date Emery's 1990 Employment Agreement will be deemed terminated and of no further force or effect, and the parties thereto shall have no further obligations to each other under said agreement, and no provisions thereof shall survive said termination.

On the date that Emery vacates the Premises, Emery may take with him, or have sent to him, the originals, including films and radiographs, of all records (including financial and medical) of the patients that he has treated, in written and electronic form, provided that such records pertain to patients Emery treated during the Transition Period and patients that Dr. Emery treated within two years prior to the Effective Date. Upon receipt of such records Emery shall assume sole responsibility for the care of those records and shall maintain them as was customary by the Corporation prior to December 31, 2007. The Corporation may make copies thereof, at its expense, for its own files. Emery agrees to maintain and be responsible for such records received from the Corporation, and shall appropriately store and retain them. In the event of a lawsuit brought by a third party against the Corporation or Guttenberg, for which the records are required and requested by Guttenberg or the Corporation, Emery shall provide said records, or make them available, to the Corporation and/or Guttenberg, in no less than five (5) business days, copying and delivery charges to be at the expense of the Corporation and Guttenberg.

Should a patient whose records Emery has taken, make request that his or her records be transferred to the Corporation and/or Guttenberg, Emery shall promptly, in no less than five (5)

- 6 -

business days, transfer the original records to the Corporation and/or Guttenberg, the cost of delivery to be paid by the Corporation and/or Guttenberg. Should a patient whose records remain with the Corporation make request that his or her records be transferred to the Emery, the Corporation and Guttenberg shall promptly, in no less than five (5) business days, transfer the original records to Emery, the costs of the delivery to be paid by Emery.

8.    **Indemnification from the Office and Equipment Leases and Other Corporation Obligations; Removal of Emery from any Lines of Credit.**

As of the Effective Date, the Corporation and Guttenberg, jointly and severally, hereby agree to, and will, indemnify and hold Emery harmless from and against any and all liabilities, losses and expenses whatsoever, including, without limitation, claims, suits, actions, proceedings, damages, judgments, awards, settlements, investigations, costs and reasonable attorneys fees and disbursements ("Claims") with respect to the Corporation's office and equipment leases, bank line of credit, and any other contractual obligations of the Corporation.

The Corporation hereby agrees to, and will, indemnify and hold Emery harmless from and against any and all Claims which Emery may incur or become obligated to pay in connection with or arising out of, relating to, or resulting from all of the business activities of the Corporation to the fullest extent permitted under the laws of the District of Columbia, and in particular from and against any claims by employees or patients of the Corporation that Emery is or may be liable to them by reason of any actions of Emery, Guttenberg, or the Corporation which took place while Emery was an employee, officer, or director of the Corporation.

During the Transition Period, Emery will provide evidence to the Corporation that he has a dental malpractice insurance policy covering him that provides coverage of $1 million per patient and $3 million total for any acts of dental malpractice that Emery may be accused of committing during the Transition Period. Emery hereby agrees that the Corporation, subsequent to the Effective Date, shall not be liable for any acts of dental malpractice that Emery may be accused of committing based on actions or inactions taken by Emery during the Transition Period, and Emery indemnifies and holds the Corporation and Guttenberg harmless from and against any such dental malpractice claims or actions, including attorneys fees and costs to defend such claims or actions, and any judgments related thereto.

Emery shall notify Guttenberg and the Corporation immediately upon learning of any such Claim. The indemnitor shall have the right, at its own expense, to control the defense of any such Claim, and if it elects to control the defense, he or it shall provide a vigorous defense and shall use counsel reasonably satisfactory to Emery. Further,

(i)    Emery shall have the right to cooperate in such defense with his own counsel at his own expense; and

- 7 -

(ii)     if the indemnitor shall not exercise its right to control the defense, and vigorously defend the Claim, then the Emery shall, in addition to any other indemnity hereunder, be reimbursed by the indemnitor for Emery's expenses (including reasonable attorneys' fees), if any, incurred in the defense of the Claim as and at the time such expenses are incurred.

The indemnitor shall have complete authority to prosecute or settle any claim, action or proceeding as it sees fit, except that if any proposed settlement imposes any requirements or acts on Emery other than the payment of money (and provided that the monies are paid by the indemnitor), or prohibits any acts by Emery, or otherwise affects Emery's operations or business, then such settlement shall not be entered into without Emery's prior written approval, not to be unreasonably withheld, conditioned or delayed.

The Corporation and Guttenberg represent that the Corporation has no borrowings with respect to which Emery is a guarantor or co-obligor, and the Corporation and Guttenberg covenant and agree that the Corporation will not draw-down on any lines of credits with respect to which Emery is a guarantor or co-obligor, and that they will request that Emery he removed as a guarantor or co-obligor under any of the Corporation's lines of credit for which Emery is a guarantor or co-obligor. In the event, however, that the lending institutions refuse to remove Emery as a guarantor or co-obligor, then the lines of credit shall be terminated by the Corporation.

9.     [Intentionally Deleted]

10.    **Non-Disparagement**.

The parties shall not, directly or indirectly, at any time :

(a) make, or cause to be made, any statement, observation or opinion, or

(b) communicate any information (whether oral or written),

that disparages, or may in any way harm the reputation of, the business of the Corporation, Guttenberg and Emery, or any relatives, or any of their respective former, present employees. This shall include, without limitation, any statement regarding the professional and personal lives of Guttenberg and Emery. A breach of this provision, shall be considered a material breach, and the breaching party concedes that injunctive relief may be granted to enjoin a breach of this provision, and that the non-prevailing party shall be liable to the prevailing party for compensatory damages, and for the attorneys fees and costs required by the prevailing party to obtain injunctive and/or compensatory relief or to enforce this provision.

Notwithstanding the foregoing, this Section 10 shall not be applicable should any of the Parties hereafter be involved as a party to litigation, in which situation each of the Parties shall make truthful statements with respect to matters at issue whether or not such statements might be

- 8 -

viewed as disparaging; and, further, if one of the Parties breaches this provision of the Agreement, the other Party shall have no continuing duty under this provision.

In the event of litigation, other than litigation among any of the parties themselves, the Party whose (disparaging) statement, representation or testimony is being sought, shall provide the other Party with notice prior to making any such statement, representation or testimony, if allowed a reasonable opportunity to do so, to permit the other Party, if it so chooses, to seek a protective order covering such statement, representation or testimony.

### 11.   Guttenberg and Corporation Release of Emery

Guttenberg and the Corporation for themselves, and for all their present and former affiliates, officers, directors, agents, attorneys, employees, shareholders, assigns, servants, sureties, successors, and assignees, hereby release Emery, and all of his present and former agents, attorneys, and employees in their capacities acting on behalf of Guttenberg and the Corporation, from any and all manner of actions, causes of actions, suits, debts, agreements, promises, damages, judgments, claims, liabilities, losses, expenses and demands whatsoever, in law or in equity, whether known or unknown, arising in whole or in part prior to the Effective Date of this Agreement, other than the obligations owed to Guttenberg and the Corporation under this Agreement. This release extends and applies to all unknown, unforeseen, unanticipated and unsuspected injuries, damages, loss and liability, and the consequences of them, as well as those now disclosed and known to exist.  The provisions of any state, federal, local or territorial law or statute providing in substance that releases shall not extend to claims, demands, injuries or damages which are unknown or unsuspected to exist at the time to the person executing such release, including, without limitation, those arising under federal securities laws, are expressly waived; provided, however, that this release shall not prevent a third party claim by Guttenberg or the Corporation against Emery in the event that a person or entity not a party to this Agreement files a complaint or claim against Guttenberg or the Corporation arising out of an occurrence(s) prior to the Effective Date for which Emery may be liable to the Corporation or Guttenberg.

### 12.   Emery Release of Corporation and Guttenberg

Emery for himself hereby releases Guttenberg and the Corporation, and all of their present and former affiliates, officers, directors, trustees, agents, attorneys, employees, parents and subsidiaries in their capacities acting on behalf of Guttenberg and the Corporation, from any and all manner of actions, causes of actions, suits, debts, agreements, promises, damages, judgments, claims, liabilities, losses, expenses and demands whatsoever, in law or in equity, whether known or unknown, arising in whole or in part prior to the Effective Date of this Agreement, other than the obligations owed to Emery under this Agreement. This release extends and applies to all unknown, unforeseen, unanticipated and unsuspected injuries, damages, loss and liability, and the consequences of them, as well as those now disclosed and known to exist.  The provisions of any state, federal, local or territorial law or statute providing in substance that releases shall not extend to claims, demands, injuries or damages which are unknown or unsuspected to exist at the time, to the person executing such release, including,

without limitation, those arising under federal securities law, are expressly waived; provided, however, that this release shall not prevent a third party claim by Emery against Guttenberg or the Corporation in the event that a person or entity not a party to this Agreement files a complaint or claim against Emery arising out of an occurrence(s) prior to the Effective Date for which Guttenberg or the Corporation may be liable to Emery.

### 13.    No Admission of Wrongdoing:

The Parties have entered into the Agreement in order to avoid the burden, expense, and distraction of litigation.  None of the Parties makes any admission of wrongdoing in any respect.

### 14.    Binding on Successors and Assigns:

The Agreement shall be binding upon and inures to the benefit of the successors and assigns of the Parties hereto.

### 15.    Entire Agreement:

This Agreement constitutes the entire agreement of the Parties and there are no other oral or written agreements among the Parties with respect to the subject matter hereof.  No waiver, modification, or amendment of any term, condition, or provision of this Agreement shall be valid or have any force or effect unless made in writing and signed by all of the Parties.

### 16.    Representation by Counsel:

In executing this Agreement, it is understood and agreed that the Parties have relied solely upon their own or their counsel's own judgment, belief, and knowledge of the nature and extent of any claims or potential claims they may have, and have not relied upon any statement or representation of another party or their representatives or employees.

No promise, enticement, or agreement not herein expressed has been made to any party, and the terms of this Agreement constitute the entire agreement among the Parties with respect to the subject matter hereof, and the terms of this Agreement are contractual and not merely a recital.

### 17.    Counterparts:

The Agreement may be executed contemporaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument.  Signatures provided by facsimile or electronic transmission shall be deemed original signatures and shall be valid and binding in all respects.

### 18.    Jointly Drafted:

The Parties acknowledge and agree that this Agreement was negotiated and drafted jointly by the Parties and that the language herein will not be construed against any Party as its drafter.

19.  **Choice of Law:**

This Agreement shall be governed and controlled as to validity, enforcement, interpretation, consideration, effect and in all other aspects by the internal laws of the District of Columbia (without giving effect to any conflict of law provision that would require the application of the law of any other jurisdiction).

20.  **Recitals:**

The recitals are incorporated by reference and made a part of this Agreement.

21.  **Dismissal with Prejudice of the Lawsuits.**

On execution of this Agreement, the parties shall cause the dismissal with prejudice of the lawsuit that Guttenberg and the Corporation filed against Emery in the United States District Court for the District of Columbia, Case No. 1:08-cv-00085.

22.  **Pending Lawsuit.**

Within five (5) business days of the Effective Date, the Parties shall file a Joint Stipulation and Order with the Court that will permit portions of the Court records to be redacted and allow the unredacted filings to be kept under seal. If the Court does not enter the Joint Stipulation and Order it shall have no effect on the validity of this Agreement which shall remain in full force and effect. The Joint Stipulation and Order shall be prepared by Guttenberg and the Corporation and shall be subject to the reasonable approval of Emery and his counsel.

IN WITNESS HEREOF, the Parties have executed the Agreement as of the date of the last signature hereto.

Robert Emery          Date          Steven Guttenberg          Date

Doctors Guttenberg & Emery, P.C.

By

Its President          Date

- 11 -

**Exhibit A**

For personal and professional reasons, Drs. Guttenberg and Emory have decided that it is in each of their best interests to establish their own individual practices, and to amicably and professionally separate their joint practice no later than February 29, 2008.  Until on or before February 29, 2008, Dr. Emory will continue to see and treat patients in the Practice's current location.

*M
08-537
RCL*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Dr. Robert E. Emery, III          88888 | Doctors Guttenberg and Emery, P.C. |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    11001<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF<br>LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Brian L. Schwalb<br>Seth A. Rosenthal<br>Venable LLP<br>575 7th Street, NW<br>Washington, DC 20004<br>(202) 344-4000 | Case: 1:08-cv-00537<br>Assigned To : Lamberth, Royce C.<br>Assign. Date : 3/28/2008<br>Description: Contract |

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government
      Plaintiff

O  3 Federal Question
      (U.S. Government Not a Party)

O  2 U.S. Government
      Defendant

⊙  4 Diversity
      (Indicate Citizenship of
      Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place<br>of Business in This State | O 4 | ⊗ 4 |
| Citizen of Another State | ⊗ 2 | O 2 | Incorporated and Principal Place<br>of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a<br>Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

**O  A. Antitrust**

☐ 410 Antitrust

**O  B. Personal Injury/
        Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**O  C. Administrative Agency
        Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
      Administrative Agency is Involved)

**O  D. Temporary Restraining
        Order/Preliminary
        Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

---

**O  E. General Civil (Other)**          **OR**          **O  F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
      defendant
☐ 871 IRS-Third Party 26
      USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
      of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
      Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
      Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
      Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
      Exchange
☐ 875 Customer Challenge 12 USC
      3410
☐ 900 Appeal of fee determination
      under equal access to Justice
☐ 950 Constitutionality of State
      Statutes
☐ 890 Other Statutory Actions (if
      not administrative agency
      review or Privacy Act

| O  **G. Habeas Corpus/ 2255** | O  **H. Employment Discrimination** | O  **I. FOIA/PRIVACY ACT** | O  **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  **K. Labor/ERISA (non-employment)** | O  **L. Other Civil Rights (non-employment)** | ⊙  **M. Contract** | O  **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

*28 USC 1332*

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Defendant has violated the terms of a contractual agreement by, inter alia, failing to pay over to Plaintiff monies due to Plaintiff under the agreement.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** to be proven at trial  Check YES only if demanded in complaint  **JURY DEMAND:** YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐  NO ☒  If yes, please complete related case form.

DATE March 28, 2008   SIGNATURE OF ATTORNEY OF RECORD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C., 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.